**PITTSBURGH NATIONAL BANK, a National Bank Association, Appellant,**

v.

**James ABDNOR, Administrator of the Small Business Administration and The Small Business Administration, an Agency of the Government of the United States of America.**

**No. 89–3624.**

United States Court of Appeals, Third Circuit.

Argued Feb. 8, 1990.

Decided Feb. 22, 1990.

Rehearing Denied March 19, 1990.

Roger G. Rulong, Jr. (argued), John R. Keating, Pollard, Walker & Vollmer, Pittsburgh, Pa., for appellant.

Thomas W. Corbett, Jr., U.S. Atty., Paul J. Brysh, Constance M. Bowden and Barbara M. Carlin, Asst. U.S. Attys. (argued), Pittsburgh, Pa., for appellees.

Before GREENBERG, SCIRICA, and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

The plaintiff, Pittsburgh National Bank (PNB), appeals from the district court's judgment in its favor for less than it claimed in a trial to the court. This court has jurisdiction under 28 U.S.C. § 1291 (1982).

### I.

For the most part, the facts found by the district court are unchallenged. PNB, a national banking association, entered into a Loan Guaranty Agreement (Deferred Participation) (the Participation Agreement) with the Small Business Administration (SBA) on September 29, 1978. The agreement was supplemented in February of 1979 and February of 1986.

Under the terms of this agreement, SBA agreed to guarantee, up to 90 percent, loans made by PNB to small businesses which would not otherwise qualify for financing under the bank's general lending policies. PNB accepted responsibility for all servicing actions and agreed to follow accepted standards of loan servicing employed by prudent lenders generally.

Pursuant to this agreement, PNB made two loans to B & L Systems Limited (B & L), a supplier of chemical feed systems primarily for municipal water and sewage treatment facilities. The first loan, dated August 29, 1983, was for $375,000. The note and agreement for this loan provided that it would be paid over a term of months (term loan).

The second loan, dated November 21, 1984, was in the amount of $175,000. The purpose of this loan was to fund a contract between B & L and Pizzagalli–Clark–Morris–Mayfield–Urban (PCM), a joint venture (contract loan). As collateral for this loan, B & L assigned to PNB the contract with PCM in the amount of $735,294 and the proceeds thereof. Paragraph 22 of the contract loan authorization stated that the terms and conditions of the term loan would apply to the contract loan and that the terms and conditions of the contract loan would apply to the term loan. A default on either loan would constitute a default on both.

On August 20, 1986, before either the term loan or the contract loan had been

fully repaid, B & L filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Since the filing of the petition in bankruptcy constituted a default under both agreements, PNB requested that SBA honor its guaranties. The principal amounts outstanding on the term loan and the contract loan were $345,326.63 and $71,114.55, respectively.

On September 17, 1986, nearly a month after the filing of B & L's bankruptcy petition, PNB received a check from PCM, B & L's joint venturer, in the amount of $139,497.05 made payable jointly to PNB and B & L. This check represented a progress payment on the contract which B & L had assigned to PNB.

Because of B & L's bankruptcy, PNB was unsure of the propriety of cashing the check and therefore delayed for twelve days in presenting the check for payment. When it did so, payment had been stopped on the check. Thereafter, SBA refused to honor its guaranties to PNB, alleging that the twelve-day delay in processing the check was a material breach of the Participation Agreement.

PNB commenced this action for breach of contract in the district court. Jurisdiction was based on 15 U.S.C. § 634(b)(1) (1988). In its answer SBA asserted that it was released from its obligation as guarantor because of the breach.

After a bench trial, the district court granted judgment in favor of PNB in the amount of $238,499.07. The court held, however, that PNB had materially breached its contractual obligations to SBA under the Participation Agreement by failing to act prudently in processing the check. Therefore, the judgment reflected a reduction equal to the total amount of the check in question. PNB appealed, seeking the full amount of the guaranties plus accrued interest thereon.

## II.

The issues presented on appeal are whether PNB breached its obligation to act as a prudent lender when it delayed cashing the check received in payment on the contract assigned to it by the debtor-in-possession and, if so, whether this failure constituted a material breach of the Participation Agreement entered into between PNB and SBA. A third issue, regarding the calculation of damages, was withdrawn by counsel at oral argument.

At the outset, we address our standard of review of the liability determination of the district court. Our starting point is the duty of care owed by PNB to SBA. The Participation Agreement provides in pertinent part:

6. *Administration of Loans....* All servicing actions shall be the responsibility of the holder who shall follow accepted standards of loan servicing employed by prudent lenders generally....

7. *Purchase by SBA....* Purchase by SBA shall not waive any right of SBA arising from Lender's negligence, misconduct, or violation of any provision of this agreement.

These provisions are reemphasized in the Code of Federal Regulations, which states:

*When SBA does not purchase.* SBA shall be released from obligation to purchase its share of the guaranteed loan unless the Lender has substantially complied with all of the provisions of these regulations, the Guaranty Agreement and the Loan Authorization ...; or upon the happening of any one or more of the following events:

(a) ... Failure of the Lender ... to service the loan in a prudent manner....

13 C.F.R. § 120.202–5 (1989).

The district court determined that PNB owed SBA a duty to meet the standards expected of a prudent lender. The parties do not challenge that legal determination. Rather, the dispute centers on the correctness of the district court's ruling that PNB did not act prudently in delaying as long as it did before attempting to cash the check from PCM.

It is not clear to us whether PNB is asserting that the ruling that PNB was not prudent is one of law subject to plenary review or a finding of fact reviewable under the clearly erroneous standard. In any

event, we are satisfied that the district court's determination constituted a finding of fact because its evaluation of SBA's actions in handling the check was intrinsically factual. Thus, we review the district court's finding under Fed.R.Civ.P. 52(a). We may set aside the district court's finding only if, looking at all the evidence, we are left with the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). We turn to the evidence with that standard in mind.

■ The basic facts found by the district court are not challenged. On September 17, 1986, almost a month after B & L's bankruptcy had been filed, PNB received the check in question, payable to PNB and B & L. PNB was not certain whether it should cash the check because B & L, the bankrupt, was also a payee, and it was concerned, *inter alia,* about violating the automatic stay provision of the Bankruptcy Code.

On the same day, one of PNB's agents went to see SBA's counsel for instructions on what to do with the check that had just been received. SBA's counsel told him to cash the check immediately and put the proceeds into a special account until a decision could be made about what to do with them.

In spite of this directive, PNB did not attempt to cash the check immediately. Instead, it sought the advice of its own attorney, who unaware of the September 17 meeting with SBA, recommended that the bank get written instructions from SBA. When none were received, PNB had another meeting with SBA several days later at which all agreed that the check should be cashed immediately. When PNB attempted to cash the check on September 29, 1986, twelve days after its receipt, the check failed to clear due to a stop payment order issued by PCM on that date.

On the basis of the foregoing record, was the district court clearly erroneous in finding that PNB did not act prudently? As noted, PNB does not attack the basic facts but argues that its "delay" before seeking

to cash the check was reasonable rather than imprudent. We turn to that argument.

PNB asserts that it had a real concern that if it cashed the check, with B & L, the bankrupt, as co-payee, it might run afoul of the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362 (1988). It argues that, since the check was for a greater amount than the remaining unpaid balance of the assigned contract loan, B & L had an interest in a portion of the proceeds. Prudence, it asserts, dictated that it not rush to cash the check.

Parenthetically, the district court found that the proceeds of the contract were intended to pay back both the contract loan and the term loan pursuant to paragraph 22 of the loan agreement. It concluded that in spite of the presence of B & L's name on the check, B & L retained no legal or equitable interest in it because it constituted contract proceeds which B & L had previously assigned to PNB.

We agree that the check proceeds belonged to PNB. Nevertheless, PNB had a legitimate concern at the outset about the automatic stay provision. But that was not the focus of the district court's inquiry. Rather, for the district court, the real issue was whether the continued delay before attempting to cash the check was prudent under the circumstances.

PNB does not explain why it did not follow the September 17 direction of SBA's counsel to cash the check and hold the proceeds for further instructions. Moreover, PNB delayed for several more days before holding a second meeting with SBA. Only then did it attempt to cash the check, at which point it was too late. As SBA's expert witness opined:

> [a] bank has the responsibility ... to protect its shareholders, its depositors, its guarantor, and when it receives a check from a borrower in a secured transaction ... it is highly negligent in not converting that check into cash and placing it, if there are complications, as indeed there are, under the Bankruptcy

Code, in an escrow account and await clarification of the situation by the court.

But PNB asserts that even if the check proceeds would ultimately belong to it, only the bankruptcy court had the authority to make that determination. This argument, though perhaps true, misses the mark. The hard fact is that PNB's lack of prudence prevented it from securing the payment subject to later court disposition.

We conclude that the district court's finding that PNB's conduct was not prudent is not clearly erroneous.

### III.

PNB next asserts that its hesitation in cashing the check should not be construed as a "material" breach of the Participation Agreement. Whether the breach was material is a question of federal law, which is informed by general principles of contract law and by the Restatement (Second) of Contracts. *First Interstate Bank v. Small Business Admin.*, 868 F.2d 340, 343 (9th Cir.1989). It is subject to plenary review.

The parties agree that the test for materiality employed by the district court, which it derived from *Eastern Ill. Trust & Sav. Bank v. Sanders*, 826 F.2d 615 (7th Cir. 1987), is the correct one. The court in *Eastern* stated the four-step analysis as follows:

> (1) Whether the breach operated to defeat the bargained-for objective of the parties; (2) whether the breach caused disproportionate prejudice to the non-breaching party; (3) whether custom and usage considers such a breach to be material; and (4) whether the allowance of reciprocal non-performance will result in the accrual of an unreasonable and unfair advantage.

*Id.* at 617 (citing mem. op. at 1396). *Cf.* Restatement (Second) of Contracts § 241 (1979).

In *Eastern*, the Seventh Circuit concluded that the breach at issue there was not material because SBA sustained no financial harm as a result of the breach. In the instant case, PNB acknowledges that there may have been some harm but argues that it was de minimis. PNB asserts that SBA's damages are only $11,945.16, the amount of a credit received by PNB from PCM after this case had been commenced, which was applied by it to reduce the balance on the contract loan. It is not apparent to us how this transaction wiped out the damages caused to SBA by PNB's breach of duty.

As SBA argues, not only was the harm to it real, it was substantial. The failure to cash the check in a timely fashion prevented the proceeds from being applied by PNB toward repayment of the loans, causing SBA a financial loss of $139,497.05.

Furthermore, SBA argues, PNB's promise to service the loan in a commercially prudent manner was a condition precedent to obtaining SBA's guarantee. When PNB breached this promise, it deprived SBA of a substantial part of its benefit of the bargain. Moreover, as SBA asserts, other courts have recognized the importance of the requirement that the bank service the loan in a commercially prudent manner. *See, e.g., Citizens Marine Nat'l Bank v. United States Dep't of Commerce*, 854 F.2d 223, 228 (7th Cir.1988) (failure to "exercise care and diligence in the 'disbursement, servicing, collection and liquidation of the Loan' " was a material breach), *cert. denied sub nom. Bank One, Stevens Point, NA v. United States Dep't of Commerce*, — U.S. —, 109 S.Ct. 1312, 103 L.Ed.2d 582 (1989).

Finally, no unfair advantage will accrue to SBA as a result of releasing it from its contractual liability to the extent of the uncashed check since it was PNB's own delay which caused the loss of the proceeds from the check.

Viewing all the circumstances, we agree with the district court that PNB's delay in cashing the check constituted a material breach of its agreement with SBA.

The judgment of the district court will be affirmed.