United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 4, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-50288
No. 03-50919

_____

JOHN DOE #1, for and on behalf of themselves
and a Class of Others Similarly Situated;
JOHN DOE #2, for and on behalf themselves and
a Class of Others Similarly Situated;
TEXAS FARM BUREAU; THE AMERICAN FARM BUREAU FEDERATION;
JOHN DOE #3,

Plaintiffs - Appellees,

versus

ANN M. VENEMAN, in her official capacity as
Secretary of the United States Department of Agriculture;
WILDLIFE SERVICES; ANIMAL AND PLANT HEALTH INSPECTION SERVICE;
UNITED STATES DEPARTMENT OF AGRICULTURE,

Defendants - Appellants,

versus

ANIMAL PROTECTION INSTITUTE,

Intervenor Defendant - Appellant.

_____

Appeals from the United States District Court
for the Western District of Texas
_____

Before DeMOSS, STEWART and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge.

These appeals arose from a lawsuit in which a group of
farmers and ranchers sought to prevent the United States
Department of Agriculture (USDA) from releasing certain

1

government records to the Animal Protection Institute (API) in response to API's Freedom of Information Act (FOIA) request. The district court entered an injunction preventing release of certain information, and the USDA and the API appealed.

## History of the Lawsuit

The lawsuit underlying these appeals is a "reverse-FOIA" action. In a reverse-FOIA action, a plaintiff seeks to prevent a governmental agency from releasing information to a third party in response to the third party's request for information under FOIA.[1] In this lawsuit, a group of farmers and ranchers sought to prevent the release of information sought by API through a FOIA request.

In November 1997, the API, an animal advocacy group, submitted a FOIA request to the USDA for certain documents maintained by a USDA agency, the Animal and Plant Health Inspection Service (APHIS). The API sought copies of a form entitled "Application Data Report (Livestock Protection Collars)" from every state in which the Livestock Protection Collar (LPC) has been used.

Livestock owners use the LPC to protect sheep and goats in fenced pastures from coyotes who frequently attack by biting an animal's neck. The LPC consists of a bladder containing a toxic, restricted-use pesticide that is attached to an animal's neck

---

[1]*See* AM. JUR. 2D *Freedom of Info. Acts* § 609 (2004).

with a velcro strap.  If a coyote bites the animal's neck and punctures the bladder, the coyote will be poisoned.

Employees of a USDA agency, Wildlife Services (WS), apply LPCs to animals as a service to farmers and ranchers.  Livestock owners using this service enter into Cooperative Agreements with WS under which they share the cost of the LPCs and allow WS to enter their properties to apply the collars.  As a result, the participants in the LPC program are called "Cooperators." Cooperators may be individuals, businesses, or governmental entities.

A Cooperative Agreement contains the Cooperator's name, address, telephone number, ranch or farm name, the property owner's name and address, the land class and size, and a Cooperative Agreement number.  The form sought by API contains only the name and location of the ranch or farm where the collars have been applied and the Cooperative Agreement number.

In response to API's request for these forms, APHIS released LPC records for the six states where the LPCs have been used, but redacted the names and locations of the ranches and farms where the collars have been applied, citing Exemption 6 of FOIA.  Under Exemption 6, federal agencies may withhold from disclosure any "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal

3

privacy."[2]  Dissatisfied with the redacted records, API sought an

administrative appeal on June 24, 1999.  In August 1999, when the

appeal was still unresolved, API filed a FOIA lawsuit against WS

in federal court in the District of Columbia.  In a FOIA lawsuit,

a plaintiff who has unsuccessfully sought information through a

FOIA request seeks to force the disclosure of the requested

information.  After API filed its lawsuit, the Office of General

Counsel of the USDA determined the records could be released

without redaction.

Before a release occurred, the appellees, three John Doe

plaintiffs and two associations representing farmers and ranchers

(the *Doe* plaintiffs), sued the USDA, APHIS and WS (collectively,

the government), on November 1, 1999, in the Western District of

Texas.  The *Doe* plaintiffs sought to prevent the release of

information that could identify them as participants in the LPC

program.  The district court immediately granted a temporary

restraining order (TRO) enjoining APHIS from releasing the

personal information of individuals, entities, and applicators[3]

using LPCs or enrolled in the Livestock Protection Program.  The

---

[2]5 U.S.C. § 552(b)(6).

[3]An individual who is authorized to use a restricted-use pesticide, such as the pesticide used in the LPC collar, is referred to as an applicator.  To use a restricted-use pesticide, an individual must be certified through an Environmental Protection Agency approved program.  *See* 7 U.S.C § 136(e); 7 U.S.C. § 136i.

TRO was converted to a preliminary injunction on November 15, 1999.

The government moved to transfer the *Doe* case to the D.C. district court where API's lawsuit was pending, or alternatively to stay the *Doe* action. The district court denied the motion in January 2000, but the D.C. district court stayed API's lawsuit in June 2000 pending disposition of the *Doe* lawsuit. API then moved to intervene in the *Doe* lawsuit.

Before the *Doe* plaintiffs filed their lawsuit, a third litigation began that served as the basis for an amendment to the *Doe* complaint. In January 1999, an environmental group called Forest Guardians submitted a FOIA request to APHIS for a computer diskette copy of the management information system (MIS) database used as the basis for all WS annual reports for 16 states. The MIS database contains information about the LPC program and similar agreements for participants of other USDA wildlife control programs, including Cooperator names and addresses, agreement numbers, and county and acreage information about Cooperator property. Because of the prohibitive cost and the disruption the requested download would cause, APHIS attempted to persuade Forest Guardians to narrow its request. Dissatisfied with this response, Forest Guardians sued APHIS in March 1999 in the District of New Mexico. APHIS and Forest Guardians quickly began settlement negotiations.

In the process of reaching a settlement, APHIS began to release partial sets of reports generated from the MIS database. In the first two releases, in October 1999 before the *Doe* suit was filed, APHIS redacted the names and addresses of private Cooperators, citing Exemption 6. APHIS made a third release in November 1999. That release consisted of reports using data from states that did not participate in the LPC program. The names and farm or ranch addresses of private Cooperators were not redacted. APHIS's third release was based on guidance from USDA's Office of General Counsel that the names and addresses of persons or entities dealing with the government in a business capacity should generally not be withheld under Exemption 6.

In December 1999, Forest Guardians agreed to settle its lawsuit and to forgo MIS reports from states participating in the LPC program. In exchange, APHIS agreed not to withhold information from remaining records under Exemption 6. When the *Doe* plaintiffs learned of the pending settlement, they amended their complaint. Through the amendment, filed on January 11, 2000, the *Doe* plaintiffs sought to prevent release of personal Cooperator information in response to Forest Guardians' FOIA request, and any other FOIA requests seeking personal Cooperator information. Because the amendment sought to prevent disclosure of *all* personal Cooperator information, not just the information in LPC application records, the amendment considerably broadened

6

the relief API originally sought.

In response to the amendment and a second request for a TRO, the district court in the *Doe* case issued a new TRO on January 11, 2000 and expanded the previous preliminary injunction on February 9, 2000. The expanded injunction prohibited the government from disclosing any information that would allow the recipient to obtain or deduce the identity of Cooperators. On August 8, 2000, the district court certified a plaintiff class consisting of all individuals or entities who have been Cooperators[4] since January 1, 1990.

Forest Guardians also finalized its settlement negotiations with APHIS in August 2000. To settle on terms that would not violate the expanded preliminary injunction, Forest Guardians agreed to settle for release of only one type of report from the MIS database – county summary reports – with Cooperator identifying information redacted. Under the settlement, the government agreed to cooperate in the release of further non-exempt information in the county summary reports if and when the expanded preliminary injunction in the *Doe* case was lifted. On February 27, 2001, Forest Guardians' claims in the New Mexico

---

[4]Neither the order certifying the class, nor the *Doe* plaintiffs' motion for class certification, defined "Cooperator." The plaintiffs' complaint, however, describes Cooperators as "ranchers and others who have requested assistance from, or entered into Cooperative Agreements with, WS to control predators."

lawsuit were dismissed with prejudice under the settlement.

On September 30, 2002, the district court granted the government's motion to dismiss the *Doe* plaintiffs' constitutional claims and the claims based on other pending FOIA requests. The district court then granted the *Doe* plaintiffs' motion for summary judgment, holding that personal identifying information about Cooperators was exempted from disclosure under Exemptions 3[5] and 6 of FOIA, and protected from disclosure by the Privacy Act.[6]

The district court entered a permanent injunction on February 14, 2003. The injunction enjoins the government

> from releasing Personal Information [of a Cooperator] contained in: (a) records regarding the Defendants' livestock protection collar program, including but not limited to the following: Pre-Application Inspection Reports, Application Data Reports, LPC Project Summaries, LPC Project Data Reports, Records of 1080 Toxic Collar Use, LPC Quarterly Reports; (b) records regarding the location where restricted use pesticides have been, or will be, applied in connection with the Defendants' activities; and (c) the MIS database or the records from which information in the MIS database derives, including written agreements by which Plaintiff Cooperators authorize the government Defendants to enter their property.

The injunction defined Personal Information as

> information that reveals, directly or in combination with other information, the identity of a Plaintiff

---

[5]Exemption 3 provides that FOIA does not apply to matters specifically exempted by statute. *See* 5 U.S.C. § 552(b)(3). This exemption is discussed in more detail later in the opinion.

[6]*See* 5 U.S.C. § 552a(g).

Cooperator. "Personal Information" includes but is not limited to, the following: names, addresses, the county in which a Plaintiff Cooperator is located, the acreage of the Plaintiff Cooperator's property, the name of a Plaintiff Cooperator's ranch or farm, telephone numbers, agreement numbers and agreement types. "Personal Information" includes any type of identifying information which will allow the recipient of the information to ascertain the name, address, ranch, or location of a Plaintiff Cooperator.

In response to this language, API filed a notice of appeal. The government moved to alter or amend the injunction.

In its motion, the government argued that the permanent injunction is vague and overbroad. Because it maintained the injunction prevented coordination among governmental agencies and cooperation in criminal investigations, the government asked the court to amend the injunction to avoid unintended consequences. The district court denied the motion.

The district court then granted a request by the *Doe* plaintiffs for attorney's fees. In awarding attorney's fees, the district judge relied on APHIS's November 1999 release of information to Forest Guardians. The district court found the release was a willful and intentional violation of the Privacy Act that caused mental anguish and emotional injury to the plaintiffs. The government then filed a notice of appeal. Together, the appellants challenge all aspects of the injunction and the award of attorney's fees.

**Whether the District Court Exceeded Its Jurisdiction**

In their first issue, the appellants maintain the district

9

court lacked jurisdiction to enjoin the release of personal information in the MIS database because the *Doe* plaintiffs' claim regarding Forest Guardians' FOIA request was moot when the injunction was entered. The appellants contend that the only request for disclosure properly before the district court was API's FOIA request. As a result, the appellants argue that the district court exceeded its jurisdiction.

In *Chrysler Corporation v. Brown*, the United States Supreme Court discussed the circumstances in which a private party may seek an order enjoining release of government records in response to a FOIA request.[7] The Court explained that because FOIA is exclusively a disclosure statute, FOIA does not provide a private right of action to enjoin a governmental agency's disclosure in response to a request for information under FOIA.[8] Although FOIA does not permit a private party to enjoin disclosure, the Court explained that a party seeking to prevent disclosure in response to a FOIA request may seek judicial review of an agency's decision to release information under the Administrative Procedures Act (APA).[9] Under the APA,[10] a court can set aside an agency's determination if it is "arbitrary, capricious, an abuse

---

[7]*Chrysler Corp. v. Brown*, 441 U.S. 281 (1979).

[8]*See Chrysler Corp.*, 441 U.S. at 292-93.

[9]*See Chrysler Corp.*, 441 U.S. at 318.

[10]*See* 5 U.S.C. § 706(2)(A).

of discretion, or otherwise not in accordance with law."[11]  Thus,

a district court may review an agency decision to release

information under FOIA and set aside that decision if it is

"arbitrary, capricious, an abuse of discretion, or otherwise not

in accordance with law."[12]

Under basic Article III principles, this court can uphold a

district court's order setting aside an agency determination only

to the extent there was a live controversy before the district

court.[13]  The exercise of judicial power under Article III of the

United States Constitution depends upon the existence of a case

or controversy.[14]  Without an actual case or controversy, a

federal court has no jurisdiction.[15]  Under Article III,

> a federal court has neither the power to render
> advisory opinions nor "to decide questions that cannot
> affect the rights of litigants in the case before
> them."  Its judgments must resolve "a real and
> substantial controversy admitting of specific relief
> through a decree of a conclusive character, as
> distinguished from an opinion advising what the law
> would be upon a hypothetical state of facts."[16]

The usual rule in federal cases is that an actual controversy

---

[11]5 U.S.C. § 706(2)(A).

[12]*Id.*

[13]*See* U.S. CONST. art. III, § 2 ("judicial Power shall extend to all Cases...and...to controversies").

[14]*See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).

[15]*See Baccus v. Parish*, 45 F.3d 958, 961 (5th Cir. 1995).

[16]*Preiser*, 422 U.S. at 401 (citations omitted).

must exist at all stages of litigation, not merely at the time the complaint is filed.[17]  Where a controversy no longer exists, a claim based on that controversy is moot.

"In general, a matter is moot for Article III purposes if the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."[18]  To have a legally cognizable interest in the outcome, a plaintiff must demonstrate an injury traceable to the defendant that is susceptible to some judicial remedy.[19]  "Generally settlement of a dispute between two parties renders moot any case between them growing out of that dispute."[20]

In the instant case, the issue of the release of personal information in the MIS database became moot when Forest Guardians agreed to settle its lawsuit for the release of redacted county summary reports.  Although the *Doe* plaintiffs were not part of the settlement, they had no injury traceable to the government

---

[17]*See Roe v. Wade*, 410 U.S. 113, 124-25 (1973).

[18]*Sierra Club v. Glickman*, 156 F.3d 606, 619 (5th Cir. 1998).

[19]*See Baccus*, 45 F.3d at 961.

[20]*ITT Rayonier Inc. v. United States*, 651 F.2d 343, 345 (5th Cir. 1981) (action for declaratory and injunctive relief against EPA based on claim EPA was exceeding statutory authority in promulgating and enforcing list of violating facilities was moot, where suit brought by United States against plaintiff had been settled and dismissed and EPA had removed plaintiff from its list).

that was susceptible to a judicial remedy because APHIS decided *not* to release personal information.  A reverse-FOIA suit simply does not provide the *Doe* plaintiffs with the remedy they seek.

A plaintiff seeking to prevent disclosure under FOIA may seek judicial review of an agency's decision to release information in response to a FOIA request,[21] but a plaintiff has no remedy until the agency determines it will release requested information.[22]  In this case, APHIS did not decide to release the MIS database or personal Cooperator information contained within the MIS database.  Under the terms of the settlement agreement, APHIS agreed to release only redacted county summary reports – that is, reports without personal identifying information.  Thus, APHIS never decided to release the personal information that forms the basis of the *Doe* plaintiffs' amended claims.[23] Consequently, the only relevant agency decision was the decision *not* to release personal Cooperator information.

Even though APHIS decided not to release personal Cooperator information, the district court enjoined the release of personal information contained in the MIS database.  By doing so, the district court acted without an actual controversy and exceeded

---

[21]*See* 5 U.S.C. § 706(2)(A).

[22]*See Chrysler Corp*., 441 U.S. at 318.

[23]APHIS released some personal information, but that information related to non-LPC states, information not relevant to the *Doe* plaintiffs' claims about API's FOIA request.

the legal basis for review under the APA.  As a result, the district court exceeded its jurisdiction by enjoining the government from releasing personal information in the MIS database.

The *Doe* plaintiffs argue on appeal that their claim about personal information in the MIS database was not moot because they also challenged the USDA policy which would have permitted release of the information requested by Forest Guardians.  The second amended complaint does not support that argument.  The second amended complaint specifically complains about Forest Guardians' request for the MIS database information and identifies "the Forest Guardian Suit and Other Pending FOIA Requests" as the fifth and sixth claims for relief.  Although the amended complaint also refers to a change in the government's interpretation of Exemption 6, the references cannot be reasonably interpreted as asserting a challenge to the policy.  Instead, the references constitute factual allegations that support the *Doe* plaintiffs' request for the district court's review of APHIS's decision to release information to Forest Guardians.  These factual allegations did not create a controversy for the district court to resolve.

The *Doe* plaintiffs also contend their claims about personal information in the MIS database are not moot because the settlement agreement included a promise that APHIS would release

14

further non-exempt information in the county summary reports if and when the expanded preliminary injunction in the *Doe* case is lifted. Because they maintain APHIS has not made full disclosure under the settlement agreement, the *Doe* plaintiffs contend the claim was not moot.

Although the *Doe* plaintiffs maintain the government has not fully complied with the settlement agreement, the promise in the settlement agreement does not preserve a live issue for resolution by the district court. Under the settlement, APHIS promised

> to cooperate with [Forest Guardians] to produce within a reasonable time given the amount of review and redaction any additional non-exempt information withheld from county summary reports . . . if and when the injunction issued by the Texas District Court is lifted or vacated, in accordance with the requirements of any court order lifting or vacating that injunction.

Rather than serving as a self-executing commitment to release information upon the lifting of the injunction, this language represents a promise to cooperate with future FOIA requests for non-exempt information. Any releases of MIS material to Forest Guardians will depend on Forest Guardians' renewed expression of interest and a determination of releasability at that time. If Forest Guardians expresses that interest, and the government decides to release additional information, the *Doe* plaintiffs will then have a basis for a reverse-FOIA lawsuit concerning the release.

15

**Whether Exemption 3 Applies to API's FOIA Request**

In addition to enjoining the government from disclosing personal information in the MIS database, the district court enjoined WS from releasing Cooperators' personal information contained in records regarding the LPC program. The district court determined such information is exempted from disclosure under Exemption 3 of FOIA. Although the government maintained below that Exemption 3 does not apply to API's FOIA request, it now agrees the exemption applies. API, however, challenges this finding on appeal.

Exemption 3 provides that FOIA

does not apply to matters that are . . . <u>specifically exempted from disclosure by statute</u> . . ., provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.[24]

The district court found that the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA)[25] prohibits disclosure of the information API sought.

FIFRA establishes a comprehensive scheme for registering and regulating pesticides in order "to provide for the protection of man and his environment."[26] As part of the registration scheme,

---

[24] 5 U.S.C. § 552(b)(3) (emphasis added).

[25] 7 U.S.C. §§ 136-136y.

[26] S. REP. No. 92-838 (1972), *reprinted in* 1972 U.S.C.C.A.N. 3993, 3995.

16

the Administrator of the Environmental Protection Agency (EPA) classifies pesticides as being for general or restricted use.[27] When the Administrator determines that a pesticide may generally cause "unreasonable adverse effects on the environment," the Administrator classifies the pesticide for restricted use.[28] The Administrator's classification of pesticides as restricted-use is codified in title 40 of the Code of Federal Regulations.[29]

The restricted-use pesticide used in LPCs – sodium fluoroacetate – is classified as a restricted-use pesticide under title 40.[30] To use a restricted-use pesticide like sodium fluoroacetate, an individual must be certified through an EPA approved program.[31] Individuals who are authorized to use or supervise the use of restricted-use pesticides are referred to as certified applicators.[32]

Section 136i-1 of FIFRA requires certified applicators of restricted-use pesticides to maintain certain application records.[33] Although these records are available to federal and

---

[27]See 7 U.S.C § 136a(d).

[28]See 7 U.S.C. § 136a(d).

[29]See 40 C.F.R. § 152.175 (2004).

[30]See 40 C.F.R. § 152-175 (2004).

[31]See 7 U.S.C. §§ 136(e), 136i.

[32]See 7 U.S.C. § 136(e).

[33]See 7 U.S.C. § 136i-1(a)(1).

17

state agencies dealing with pesticide use or any health or environmental issue related to the use of pesticides, FIFRA prohibits those agencies from releasing data, "including the location from which the data was derived, that would directly or indirectly reveal the identity of individual producers."[34] Consequently, FIFRA prohibits the government from releasing data, including the location from which the data was derived, that would directly or indirectly reveal the identity of Cooperators using the LPC because the LPC uses sodium fluoroacetate.[35] Because FIFRA prohibits disclosure, the personal information in the LPC application forms is exempted from disclosure under Exemption 3 of FOIA.

API, however, maintains Exemption 3 does not apply to its request because FIFRA's prohibition applies only to federal agencies that have accessed applicator records under subsection (b) of FIFRA's record-keeping provision.[36] That provision states that:

> Records maintained under subsection (a) of this section shall be made available to any Federal or State agency that deals with pesticide use or any health or environmental issue related to the use of pesticides, on the request of such agency. Each such Federal agency shall conduct surveys and record the data from individual applicators to facilitate statistical analysis for environmental and agronomic purposes, but

---

[34] 7 U.S.C. § 136i-1.

[35] *See* 7 U.S.C. § 136i-1.

[36] *See* 7 U.S.C. § 136i-1.

in no case may a government agency release data, including the location from which the data was derived, that would directly or indirectly reveal the identity of individual producers. In the case of Federal agencies, such <u>access</u> to records maintained under subsection (a) of this section shall be through the Secretary of Agriculture, or the Secretary's designee. State agency requests for <u>access</u> to records maintained under subsection (a) of this section shall be through the lead State agency so designated by the State.[37]

Because it maintains that the LPC documents are not records that WS accesses under this language, API contends FIFRA's prohibition against release does not apply to the information it requested from WS.

API's interpretation of this language, however, is illogical.  Under API's interpretation, FIFRA would permit WS to directly release the application records it maintains as a certified applicator of a restricted-use pesticide and reveal the identities of individual agricultural producers, but protect release if WS forwarded the information to another component of USDA - the Secretary of Agriculture — which would then forward it to another federal agency.  Not only is this illogical, this interpretation contradicts the act's legislative history.  The legislative history indicates that Congress was concerned about protecting the privacy of farmers who use restricted-use pesticides.[38]  Because FIFRA prohibits the government from

---

[37]7 U.S.C § 136i-1(b) (emphasis added).

[38]*See* S. Rep. No. 101-357 (1990), *reprinted in* 1990 U.S.C.C.A.N. 4656, 4881 (indicating on July 6, 1990 that "[r]ecords may not be disclosed to anyone other than the

19

releasing data that would reveal the identity of individuals using the LPC because the LPC uses a restricted-use pesticide, the district court properly concluded that Exemption 3 precludes release of the personal information of Cooperators in the LPC application forms.[39]

### Whether the Injunction Is Vague and Overbroad

The appellants also contend the injunction is vague and overbroad. Specifically, the appellants complain that the order enjoins the government from releasing personal information in "records regarding the Defendants' livestock protection collar program;" "records regarding the location where restricted use

_____

employees of the agencies involved"); 136 Cong. Rec. S10902-03, S10933, 1990 WL 14872 (complaining on July 27, 1990 that proposed amendment does not adequately protect the privacy of farmers because it allows persons other than government officials to access pesticide-use records and exposes farmers to mischief by activist groups); H.R. Conf. Rep. No. 101-916, at § 145, subtitle H (1990), *reprinted in* 1990 U.S.C.C.A.N. 5286, 5459 (advising on October 22, 1990 that information will be restricted from disclosure, except to employees of federal and state agencies that deal with pesticide use or any health or environmental issues related to the use of such pesticides).

[39]The district court also found that Exemption 6 of FOIA and the Privacy Act protect the personal information of Cooperators from disclosure. API challenges these determinations in its appeal. API's appeal, however, can be resolved without considering Exemption 6 or the Privacy Act.
Because the district court lacked jurisdiction to enjoin release of personal information contained in the MIS database, and because Exemption 3 applies to the personal information in LPC application forms, this court need not consider API's arguments about Exemption 6 or the Privacy Act. Regardless of whether Exemption 6 applies to personal information in LPC application forms, or whether the Privacy Act protects the information, the result would be the same in this case because Exemption 3 protects the information from disclosure.

20

pesticides have been, or will be, applied;" and "the MIS database or the records from which information in the MIS database derives." The appellants maintain this language is overbroad because it addresses matters that were not properly before the district court.

The appellants also complain that the injunction defines "personal information" as "information that reveals, directly or in combination with other information, the identity of a Plaintiff Cooperator." They further complain that the definition includes "identifying information which will allow the recipient of the information to ascertain the name, address, ranch, or location of a Plaintiff Cooperator." The appellants argue that the language defining personal information is vague because the government has no way of determining what information might allow a recipient to determine Cooperator identities and locations, and overbroad because it prohibits the release of the county where Cooperator property is located.

Rule 65 of the Federal Rules of Civil Procedure requires an injunction to be "specific in terms; [and] describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained."[40]  "[T]he scope of injunctive relief is dictated by the extent of the violation

---

[40]FED. R. CIV. P. 65(d).

established. . . ."[41]  The district court must narrowly tailor an injunction to remedy the specific action which gives rise to the order.[42]  An injunction fails to meet these standards when it is overbroad or vague.[43]

> [T]he broadness of an injunction refers to the range of proscribed activity, while vagueness refers [to] the particularity with which the proscribed activity is described.  "Vagueness" is a question of notice, i.e., procedural due process, and "broadness" is a matter of substantive law.[44]

In the instant case, the injunction is overbroad because it covers personal information in the MIS database or records from which information in the MIS database derives.  The release of personal information in the MIS database was not properly before the district court when it entered the injunction.  As a result, the district court exceeded the scope of judicial review permitted under the APA.  Where a court enters an injunction that exceeds the scope of available judicial review, an injunction is necessarily overbroad because it exceeds the extent of the violation established.[45]

---

[41]*Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

[42]*See Valley v. Rapides Parish Sch. Bd.*, 646 F.2d 925, 942 (5th Cir. 1981).

[43]*U.S. Steel Corp. v. United Mine Workers of Am.*, 519 F.2d 1236, 1246 (5th Cir. 1975).

[44]*U.S. Steel Corp.*, 519 F.2d at 1246 n.19.

[45]*See Califano*, 442 U.S. at 702 (scope of injunctive relief is dictated by extent of the violation established).

The injunction is also overbroad because it covers the release of personal information in records regarding the location where restricted-use pesticides have been, or will be, applied. In their second amended complaint, the *Doe* plaintiffs complained about two FOIA requests – API's request for particular LPC records and Forest Guardians' request for the MIS database. The complaint does not challenge an agency decision to release the locations where restricted-use pesticides have been, or will be, applied. Expanding injunctive relief to cover the locations where restricted-use pesticides have been, or will be, applied, exceeded the legal basis for judicial review under the APA. Without an agency decision to release personal information in "records regarding the location where restricted use pesticides have been, or will be, applied," an injunction enjoining such a release constitutes an impermissible advisory opinion.[46]

The injunction is also overbroad because it covers all LPC records. In their second amended complaint, the *Doe* plaintiffs sought declaratory judgment that "disclosure of personal information of the type sought by API in the API Suit" would be "arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with the law." API sought only LPC application forms. Where a plaintiff seeks review pursuant to the APA, an

---

[46]*See Preiser*, 422 U.S. at 401 (federal courts have no power to render advisory opinions).

injunction that enjoins an agency from disclosing more than has been requested or more than the agency has determined to release is overbroad because it exceeds the legal basis for the lawsuit.[47] Even though the *Doe* plaintiffs seek declaratory judgment in regard to the *type of information* API sought, the APA limits the *Doe* plaintiffs to the information API requested – that is, the request for specific LPC application forms. The district court's injunction order is overbroad because it includes *all* LPC records rather than the particular LPC application forms API requested.

Additionally, the injunction is overbroad because it can be reasonably read to enjoin the government from releasing information to anyone, not to just API. Because the *Doe* plaintiffs were limited under the APA to WS's decision to release information to API, the injunction is overbroad because it applies to requests that were not before the district court.

Finally, the injunction's definition of Personal Information is overbroad because it includes the county in which a plaintiff Cooperator is located. The record indicates no basis for concluding that such information would identify a Cooperator. As a result, that portion of the definition is overbroad because it covers more than the violation established.[48]

---

[47]*See U.S. Steel Corp.*, 519 F.2d at 1246 n.19 (explaining that broadness of an injunction refers to the range of proscribed activity).

[48]*See Califano*, 442 U.S. at 702.

In addition to being overbroad, the injunction uses vague language.  Although the definition of personal information includes "reasonable detail,"[49] it is not specific in its terms[50] because it encumbers the federal defendants with determining what combination of information might enable API, or others for that matter, to determine the name, address, ranch, or location of a Cooperator.

**The Award for Attorney's Fees and Costs**

The district court awarded the *Doe* plaintiffs attorney's fees and costs under the Privacy Act.  In its order, the district court stated that even if the award was not recoverable under the Privacy Act, it would still award attorney's fees as a sanction based on the government's willful violation of the court's injunction, and alternatively, under the Equal Access to Justice Act (EAJA).[51]  The government challenges this award on appeal.

The Privacy Act provides for a private cause of action whenever a governmental agency fails to comply with the requirements of the act in a way that has an adverse effect on an

---

[49]The order states that "personal information" includes "names, addresses, the county in which a Plaintiff Cooperator is located, the acreage of the Plaintiff Cooperator's property, the name of a Plaintiff Cooperator's ranch or farm, telephone numbers, agreement numbers and agreement types."

[50]*See* FED. R. CIV. P. 65(d).

[51]*See* 28 U.S.C. § 2412.

25

individual.[52]  Where a court finds an agency "acted in a manner which was intentional or willful," the Privacy Act authorizes the court to award attorney's fees and costs.[53]  Although the *Doe* plaintiffs maintain their lawsuit was, at least in part, a Privacy Act lawsuit, the second amended complaint does not support that position.

Instead of reflecting a cause of action under the Privacy Act, the second amended complaint reflects a request for declaratory judgment.  The *Doe* plaintiffs did not allege the federal defendants failed to comply with a provision of the Privacy Act in a way that adversely harmed them; rather they sought a declaration "pursuant to 28 U.S.C. § 2201 [the Declaratory Judgments Act] that disclosure of personal information of the type sought by API in the API Suit would be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law."  Thus, the *Doe* plaintiffs did not establish the prerequisite for attorney's fees under the Privacy Act – that is, a lawsuit under the Privacy Act.

Moreover, no basis exists for a finding that the government acted with intentional or willful noncompliance with the act. The district court found the federal defendants acted willfully because they "released personal information about approximately

---

[52]*See* 5 U.S.C. § 552a(g)(1).

[53]*See* 5 U.S.C. § 552a(g)(4).

26

170 individuals in New Mexico."[54]  This disclosure consisted of unredacted MIS reports from non-LPC states to Forest Guardians on November 29, 1999 in response to the New Mexico lawsuit.  The release disclosed MIS reports from North Dakota, Kansas, Oklahoma, and Arizona.  Although the district court's summary judgment order states the release occurred after it entered a TRO in this case, the TRO could not have applied to the release because the *Doe* plaintiffs did not amend their complaint to include Forest Guardians' FOIA request until January 11, 2000.  Until that time, the district court had only API's FOIA request for specific LPC application forms before it.  As a result, the November 1999 disclosure to Forest Guardians provides no basis for attorney's fees and costs.

In addition, the release provides no basis for sanctioning the federal defendants.  First, unless the government has expressly waived its immunity, sovereign immunity bars sanctions.[55]  The district court's order does not specify a waiver that would permit a sanction.  Second, there is no factual basis

---

[54]Although the district court's order stated that the disclosure "released personal information about 170 individuals in New Mexico," the disclosure did not release personal information about individuals in New Mexico.  The order is more reasonably read as: released personal information about 170 individuals in the New Mexico lawsuit.

[55]*See United States v. Idaho Dep't of Water Res.*, 508 U.S. 1, 8-9 (1993) (a specific waiver of sovereign immunity is required before the United States may be held liable for monetary exactions).

27

for a sanction.  The government cannot be sanctioned for a release of non-LPC records based on a TRO or preliminary injunction that prohibits release of LPC records.

Finally, the EAJA does not provide a basis for an award of attorney's fees and costs in this case.  The *Doe* plaintiffs did not plead for attorney's fees and costs under the EAJA.  But even if the plaintiffs had asked for attorney's fees and costs under the EAJA, the district court's order shows that the district court never considered whether the government's position was "substantially justified" as required for a recovery under the EAJA.[56]

## Conclusion

The district court erred in three regards.  The district court exceeded its jurisdiction by enjoining the release of the MIS database.  The court used overbroad and vague language in the injunction order.  The district court erred by awarding the plaintiffs attorney's fees and costs.  As a result, this court REVERSES the portion of the injunction order that enjoins release of the MIS database, REVERSES those portions of the injunction discussed in this opinion as overbroad and vague, REVERSES the award of attorney's fees, and REMANDS this case to the district court for modification of the injunction order.  The court AFFIRMS the injunction order in all other respects.

---

[56]See 28 U.S.C. § 2412(d)(1)(B).

28

AFFIRMED IN PART; REVERSED and REMANDED IN PART.