# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 19, 2007**

Charles R. Fulbruge III
Clerk

No. 07-40078
Summary Calendar

EMILE GREEN

Plaintiff-Appellee

v.

SEARIVER MARITIME, INC.

Defendant-Appellant

Appeal from the United States District court for the Southern District of
Texas, Galveston Division
USDC No. 3:05-CV-423

Before JOLLY, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

SeaRiver Maritime, the defendant-appellant, now appeals the district court's adverse findings of fact and calculation of damages  We AFFIRM the district court's judgment, but VACATE the district court's damages calculations.

## FACTS

In 1996, Emile Green started working for SeaRiver as a deck-hand/maintenance seaman aboard SeaRiver's tankers.  In 2001, Green

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

transferred to work on SeaRiver's harbor tugs, which included docking and other manual labor. Four to six months before the injury, he was instructed to moor using a single heavier line (instead of previously using three lighter lines). He was not provided substantive instructions on how to avoid injury for single line moorings. In one incident, he was instructed to throw an older mooring line in an upward direction; the mooring line was probably wet and thus heavier than normal. After throwing the line, his shoulder started to hurt. His shoulder continued to hurt and he visited physicians who diagnosed him with degenerative shoulder arthritis. In August, 2005, he came under the care of Dr. Zoran Cupic, a Houston orthopedist, who operated on him and concluded that the toss was the primary cause of his shoulder pain. Green filed a maritime action against SeaRiver in the United States District Court for the Southern District of Texas and alleged negligence under the Jones Act, 46 U.S.C. § 688 and unseaworthiness; he sought damages and maintenance and cure. SeaRiver contests liability for damages, but paid maintenance and cure. During the bench trial, after the plaintiff closed his case, SeaRiver moved for judgment on partial findings under Rule 52(c) but its motion was denied. At the conclusion of the trial, the trial court entered its Findings of Fact and Final Judgment in favor of Green, awarding damages of $508,323.75 with pre-judgment and post-judgment interest.

## ANALYSIS

### 1. District Court Did Not Clearly Err in Denying SeaRiver's Rule 52(c) Motion and its Findings of Fact in its Judgment

We review a denial of a Rule 52(b) motion for abuse of discretion. We review findings of fact made pursuant to Rule 52(c) for clear error and conclusions of law de novo. Bursztajn v. United States, 367 F.3d 485, 488-89 (5th Cir. 2004). We similarly review the trial court's factual findings at judgment for clear error. In re Mid-South Towing Co., 418 F.3d 526, 531 (5th Cir. 2005).

Since the appellant presents the same arguments against the trial court's adoption of the plaintiff's findings of fact to infer liability at judgment and in its denial of the Rule 52(c) motion, we will apply the same analysis to both of these grounds for appeal.

The appellant contends no evidence supports the trial court's conclusion that the one-person one-line tie-up was dangerous; that Green was inexperienced with one-line tie-up moorings; that the line was abnormally heavy and different from the average line; that the particular mooring causing the injury was non-routine; and that the Captain knew the line was heavy, because it had absorbed water, and was, therefore, unsuitable for mooring. Trial testimony from both the plaintiff and his Captain substantiated the court's finding that the line used in that particular mooring was heavier and larger than previous mooring lines. The court emphasized the subsequent replacement of the lines after the injury and filing of the lawsuit. While subsequent repair is not evidence of fault, it can be used as evidence for causation. In this case this evidence tends to show the mooring was likely unusual, because an alleged abnormal line was replaced and discarded in favor of a more "normal" lighter line. Compare Brazos River Authority v. GE Ionics, Inc., 469 F.3d 416, 429 (5th Cir. 2006); Bailey v. Kawasaki-Kisen, K.K., 455 F.2d 392, 396 (5th Cir. 1972). Testimony also established that the line could have absorbed water and some evidence that the one-line mooring became the standard practice after a crew reduction. Sufficient evidence exists for the district court's findings. The appellant's challenges stem from a choice between two competing witnesses, which is not clear error. See St. Martin v. Mobil Exploration & Producing, 224 F.3d 402, 408 (5th Cir. 2000) ("Our only role is to determine whether the district court committed clear error. Defendants' evidence on causation was before the district court through their experts, as were the parties' contradictory explanations . . . There is nothing in the record to indicate that the court

committed clear error in accepting one explanation over another."). There was evidence that the line was unusual and the mooring different from the usual situation, evidence that warning was inadequate, and evidence that the cause of the injuries resulted solely from the mooring incident. The district court has discretion to choose the plaintiff's view of events.

The appellant also challenges the inference of causation as post-hoc. The standard for causation in Jones Act cases is fairly lenient. Martin v. John W. Stone Oil Distributor, Inc., 819 F.2d 547, 548 (5th Cir. 1987) (quoting Landry v. Two R. Drilling Co., 511 F.2d 138, 142 (5th Cir. 1975). While post-hoc reasoning is generally fallacious by itself, such reasoning can be used to construe events as an instance of a scientifically established cause-and-effect relationship. As we noted in Black v. Food Lion, Inc., 171 F.3d 308, 314 (5th Cir. 1999), "[t]he underlying predicates of any cause-and-effect medical testimony are that medical science understands the physiological process by which a particular disease or syndrome develops and knows what factors cause the process to occur. Based on such predicate knowledge, it may then be possible to fasten legal liability for a person's disease or injury." In other words, if the plaintiff establishes a scientific evidentiary predicate that a cause-and-effect relationship exists, then circumstantial evidence related to the effect can be used to infer cause. Curtis, 174 F.3d at 670. In this case, the appellant is not challenging the reliability of Dr. Cupic's testimony that established the cause-and-effect relationship, like the appellant in Food Lion. Instead, the appellant is challenging the trial court's reliance on the expert testimony in its findings. Dr. Cupic's testimony was admitted, so the trial court could, in its discretion, credit his testimony over others. See St. Martin, 224 F.3d at 408.

Accordingly, we cannot say the trial judge committed clear error. Otto Candies, LLC v. Nippon Kaiji Kyokai Corp., 346 F.3d 530, 533 (5th Cir. 2003) ("Under a clear error standard, this court will reverse only if, on the entire

evidence, we are left with the definite and firm conviction that a mistake has been made.") (internal citations and quotations omitted). For the same reasons, the trial court did not commit clear error as to his findings of unseaworthiness and denial of the motion for a new trial.

2. The District Court Did Clearly Err In Calculating Damages

As the appellee concedes, the District Court did clearly err in calculating pre-judgment interest as including future damages. The trial court improperly awarded pre-judgment interest on the entire amount awarded, which included future lost earnings, general damages, and medical expenses. However, under maritime law, prejudgment interest can not be awarded on future damages. See Couch v. Cro-Marine Transport, Inc., 44 F.3d 319, 328 (5th Cir. 1995). Therefore, we vacate the judgment below as to the calculation of damages, and remand for calculations without pre-judgment interest on future damages.

The appellant also asserts that while the judge's memorandum ruling denied SeaRiver a credit for disability benefits paid to Green, the actual judgment and damage calculations incorporate the credit. The appellant asks us to render an opinion reversing the memorandum ruling without affecting the actual judgment. Such an opinion will not affect the rights of litigants and be advisory in nature. See John Doe #1 v. Veneman, 380 F.3d 807, 814 (5th Cir. 2004). We decline to consider this issue on appeal.

CONCLUSION

For the foregoing reasons, we AFFIRM the District Court's Judgment, but VACATE its calculation of damages, and REMAND for damages calculations consistent with this opinion.